IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONNIE TITCHENELL. | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| vs. | : | NO. 11-563 |
| | : | |
| APRIA HEALTHCARE INC. | : | |
| **Defendant.** | : | |

DuBOIS, J.                                                          November 8, 2011

**M E M O R A N D U M**

## I.      Introduction

Plaintiff Connie Titchenell filed this action against her former employer, defendant Apria

Healthcare, Inc. ("Apria"), alleging that defendant violated the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 et seq.  She contends that, as a Customer Service Specialist, she

worked ten to fifteen hours per week "off the clock" without compensation to meet defendant's

productivity demands.  According to plaintiff, defendant had a company-wide policy or pattern

of requiring Customer Service Specialists to work in excess of forty hours per week without

overtime pay.

Presently before the Court is Plaintiff's Amended Motion for Conditional Certification of

Collective Class and to Facilitate Notice Pursuant to 29 U.S.C. § 216(b) ("Pl.'s Am. Mot.").  For

the reasons stated below, the Court grants plaintiff's motion.

## II.      Background

Defendant, which provides "home respiratory therapy and home medical equipment

services," has 12,300 employees in approximately 500 offices across the country.  (Pl.'s Am.

Mot. 5.)  Between January 1, 2008, and July 2011, defendant employed 2,087 Customer Service

Specialists in all offices.  (Id.)  Plaintiff, who had worked for defendant since 1996, was a

Customer Service Specialist in defendant's Sharon Hill, Pennsylvania, office from May 2007 until defendant terminated her on September 22, 2010.  (Am. Compl. ¶¶ 11-12.)  The parties agree that Customer Service Specialists are hourly employees who are not exempt from FLSA and are subject to an Overtime Pay Policy requiring advance management approval for work in excess of forty hours per week.  (Customer Service Specialist Job Description, Pl.'s Am. Mot. Ex. D, at 1; Apria Overtime Pay Policy, Pl.'s Am. Mot. Ex. E, at 1.)

Plaintiff avers that, starting around March 2009, she routinely had to work ten to fifteen extra hours per week after clocking out at 5:00 p.m. "in order to service the number of customers demanded by [Customer Service Specialist Lead Susan Dix][1] and [Sharon Hill Branch Manager John] Dorais."  (Am. Compl. ¶¶ 14-16.)[2]  According to plaintiff, defendant only paid her for forty hours of on-the-clock time per week and did not pay her for work she did after clocking out.  (Id. ¶ 18.)  Plaintiff further alleges that Dix and Dorais were "fully aware" of her unpaid time and that defendant had a "consistent pattern and practice of requiring its Customer Service Specialists to work 'off-the-clock,' either before or after scheduled working hours, without properly compensating them."  (Pl.'s Am. Mot. 5.)

Pursuant to the June 7, 2011, Scheduling Order, the parties engaged in initial discovery concerning conditional certification.  In the motion presently before the Court, plaintiff asks the Court to conditionally certify a class consisting of

> All non-exempt Customer Service Specialists employed by Apria
> who have worked and/or are still working in any branch office of
> Apria anywhere in the United States during the liability period and

---

[1] The parties' filings spell this individual's last name as both "Dixs" and "Dix."  The Court uses "Dix," which is the spelling used by defendant, Dix's employer.

[2] Dix was also a Customer Service Specialist for some of the relevant time period in question.  In January 2010, Dix became the Customer Service Specialist Lead, which gave her some supervisory authority over plaintiff.  (Titchenell Dep., Def.'s Resp. Ex. 1, at 74-75.)

who were not paid regular or overtime wages as required by the
FLSA.

(Pl.'s Am. Mot. 10.)  Plaintiff also asks the Court to approve issuance of a proposed notice and

opt-in consent form to all potential class members and to order defendant to provide a data file

with the contact information for all potential opt-in members.  (Id. at15-16.)

In support of her motion, plaintiff has presented the following evidence:

(a) An affidavit from her attorney, Frank Schwartz, Esq., who reached nine out of a

sample of approximately 400 former Customer Service Specialists for whom defendant provided

contact information.  (Schwartz Aff., Pl.'s Am. Mot. Ex. A, ¶¶ 4-6.)

(b) The affidavits of Peter Graziano and Amy Armstrong, who worked as Customer

Service Specialists for defendant during at least part of the relevant period.  (Graziano Aff., Pl.'s

Am. Mot. Ex. B; Armstrong Aff., Pl.'s Am. Mot. Ex. C.)

(c) Defendant's Customer Service Specialist job description, (Job Description, Pl.'s Am.

Mot. Ex. D), and Overtime Pay Policy (Overtime Pay Policy, Pl.'s Am. Mot. Ex. E).

Defendant argues that plaintiff's claim "is based on individual facts and circumstances

that are not encountered or experienced by Apria Customer Service Specialists nationwide" and

that class certification is "unwarranted and infeasible."  (Def.'s Resp. Opp'n Pl.'s Am. Mot.

("Def.'s Resp.") 2.)  Defendant has presented the following evidence:

(a)  The deposition of plaintiff Connie Titchenell.  (Titchenell Dep., Def.'s Resp. Ex. 1.)

(b)  Affidavits from John Dorais, plaintiff's supervisor (Dorais Aff., Def.'s Resp. Ex. 2);

Robert Bovee, Peter Graziano's supervisor (Bovee Aff., Def.'s Resp. Ex. 6); and

Andrew Wagner, Amy Armstrong's supervisor (Wagner Aff., Def.'s Resp. Ex. 7).[3]

---

[3] According to defendant, Ms. Armstrong's last name was Harrigan while she worked at Apria.
(Wagner Aff. ¶ 3.)  This opinion refers to her as "Armstrong."

(c) Apria's "Working Hours," "Employee Relations," and "Employee Communication"

policies.  (Working Hours Policy, Def.'s Resp. Ex. 3; Employee Relations Policy,

Def.'s Resp. Ex. 4; Employee Communication Policy, Def.'s Resp. Ex. 5.)

(d) Plaintiff's performance evaluations and performance logs for 2008-2010.  (Def.'s

Resp. Exs. 8-17.)

(e) The complaints and docket reports for the three lawsuits mentioned in the Schwartz

affidavit.  (Def.'s Resp. Exs. 18-20.)

## III.    Legal Standard

FLSA provides for collective actions by employees against employers who violate the

statute, subject to two requirements: (1) the employees must be "similarly situated"; and (2) they

must give "written consent."  29 U.S.C. § 216(b).  The Supreme Court has held that "Section

216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated"

grants a district court the "requisite procedural authority to manage the process of joining

multiple parties" in an orderly and sensible manner.  Hoffmann-La Roche Inc. v. Sperling, 493

U.S. 165, 170 (1989).  Thus, district courts have "discretion, in appropriate cases, to implement

29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."  Id. at 169.

FLSA does not define the term "similarly situated," and neither the Supreme Court nor

the Third Circuit has directly addressed the meaning of the phrase.  Courts in this District have

adopted a two-step procedure for analyzing a proposed collective action.  In the first stage, the

district court makes a "preliminary inquiry into whether the plaintiff and the proposed group are

similarly situated.  This inquiry occurs early in the litigation when minimal evidence is available

to the court."  Parker v. NutriSystem, Inc., No. 08-1508, 2008 WL 4399023, at *1 (E.D. Pa. Sept.

26, 2008).  In the second stage, after discovery is complete, the court conducts a "factual analysis

of each employee's claim to ensure that each proposed plaintiff is an appropriate member of the

collective action." Lugo v. Farmer's Pride Inc., No. 07-cv-00749, 2008 WL 638237, at *3 (E.D.

Pa. Mar. 7, 2008).  The second-stage determination "require[s] a higher level of proof than was

necessary at the first stage for conditional certification."  Id.  The present motion implicates the

first step.

Courts in the Third Circuit are divided on the appropriate standard for certification of a

collective action at the first stage.  Some courts have held that a "mere allegation" that an

employer's offending policy has harmed other potential plaintiffs is sufficient to warrant

conditional certification.  See, e.g., Goldman v. RadioShack Corp., No. 03-cv-0032, 2003 WL

21250571, at *6 (E.D. Pa. Apr. 16, 2003).  Other courts have applied a stricter standard,

requiring the plaintiff to "make a 'modest factual showing' that the similarly situated

requirement is satisfied."  See, e.g., Bosley v. Chubb Corp., No. 04-cv-4598, 2005 WL 1334565,

at *3 (E.D. Pa. June 3, 2005); see also Parker, 2008 WL 4399023, at *2 (emphasizing that the

more onerous test is still "extremely lenient").  If discovery has commenced and the parties

submit deposition testimony, declarations, and other evidence in support of their respective

positions, application of the more stringent test is appropriate.  Pereira v. Foot Locker, Inc., 261

F.R.D. 60, 63 (E.D. Pa. 2009); Bishop v. AT & T Corp., 256 F.R.D. 503, 507 (W.D. Pa. 2009).

As the parties have had the benefit of discovery on this issue, the Court considers

plaintiff's amended motion under the "modest factual showing" standard.  Thus, the Court will

grant plaintiff's motion for conditional certification of a collective class if plaintiff makes "a

'modest factual showing' that the similarly situated requirement is satisfied."  Bosley, 2005 WL

1334565, at *3.  Plaintiff must "provide some 'modest' evidence, beyond pure speculation, that

Defendant's alleged policy affected other employees."  Smith v. Sovereign Bancorp, Inc., No.

03-2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003).  Without evaluating the merits of

plaintiff's case, the Court must determine "whether plaintiff's proposed class consists of similarly

situated employees who were collectively 'the victims of a single decision, policy, or plan.'"

Lugo, 2008 WL 638237, at *3 (quoting Ruehl v. Viacom, Inc., 500 F.3d 375, 388 (3d Cir.

2007)).

## IV.    Discussion

Defendant's official policy is that, consistent with FLSA, it will pay hourly non-exempt

employees for overtime, but "[a]ll overtime hours must be planned, scheduled, and approved in

advance by the local Supervisor or Manager."  (Overtime Pay Policy 1.)  Plaintiff's claim derives

from an alleged unofficial policy: she contends that defendant tacitly encourages Customer

Service Specialists to work off the clock by setting unattainable productivity goals while

severely limiting or refusing overtime.  (See Am. Compl. ¶¶ 15-16.)  To meet her burden for

conditional certification, plaintiff must make a "modest factual showing" that other Customer

Service Specialists were "similarly situated," i.e., subject to the same choice between failing to

meet performance objectives or working off the clock.

The Court held a Preliminary Pretrial Conference in this case on September 14, 2011.  At

that time, in addition to scheduling further proceedings, the Court noted that the proposed class

definition did not clearly limit the class to non-exempt Customer Service Specialists who worked

overtime and who were not paid overtime wages as required by the FLSA.  All counsel agreed

that was an oversight.  However, notwithstanding the agreement, the proposed class definition

was not changed.  Accordingly, the Court amends the proposed class definition, in accordance

with the discussion at the Preliminary Pretrial Conference, as follows:  "All non-exempt

Customer Service Specialists employed by Apria who have worked and/or are still working in

any branch office of Apria anywhere in the United States during the liability period and who

have not been paid overtime by Apria for work in excess of forty hours per week."

Defendant raises three arguments against conditional certification: (1) plaintiff worked

unpaid overtime on her own initiative and not because of defendant's policy or practice; (2)

plaintiff is not similarly situated to other potential class members; and (3) the claims of potential

class members are too individualized to treat in a collective action.  The Court addresses each

argument before turning to defendant's objections to plaintiff's proposed notice.

### 1.  Plaintiff has shown modest evidence of a policy or practice of requiring unpaid overtime

Plaintiff contends that she had to work off the clock to meet management's demands and

that Dix and Dorais were "fully aware" she was doing so because "they would regularly observe

her at work after hours and neither had approved any overtime pay."  (Am. Compl. ¶¶ 16-17.)

Defendant responds that plaintiff worked late by her own choice and that Dorais neither

suggested that plaintiff stay late nor approved of her doing so.  (Def.'s Resp. 1-2.)

The evidence currently before the Court establishes that Dorais wanted plaintiff to

improve her performance so that she could complete as many customer intakes as Dix did, but

plaintiff found she could not work as efficiently as Dix, in part because plaintiff had to answer

the phone more often than Dix.  (Titchenell Dep. 70-72.)  Thus, plaintiff would work after 5:00

p.m. to "[e]nter in the intakes, call the patients, [and] schedule appointments" because she did

not want to her intake numbers to lag.  (Id. at 55, 70.)  Plaintiff understood that if her numbers

did lag, she could lose her job.  (Id. at 134.)

Defendant emphasizes that plaintiff "never brought to [Dorais's] attention that [she had]

been working and [hadn't] been getting paid for the[] hours after 5:00," (id. at 80), and that when

she spoke to Dorais about not being able to complete all her work – which she did "[a]t least

-7-

once a month" – he said "[t]o do more training, ask people for help," not stay late (id. at 68-69).

Plaintiff admits that Dorais never explicitly told her to clock out and then complete her work.

(Id. at 132.)  However, there is evidence to support plaintiff's claim that Dorais was aware that

she worked after 5:00 p.m. without overtime pay and that he incentivized her to do so.

First, plaintiff testified at her deposition that she had told Dorais she was off the clock

when he left work:  "[Dorais] usually left at 5:00 . . . [and] would come in and say good-bye,

[and] would ask what was I was working on, and I'd tell him, and I'd say, don't worry, John, I

clocked out, and he'd say, okay, don't stay too late."  (Id. at 57 (emphasis added).)  Second,

plaintiff told Dorais how many intakes she completed after 5:00 p.m.  She would "tell [Dorais] to

look" at the computer records of her intakes so he "could see the time" that she entered them.

(Id. at 134.)  The records attached to Dorais' affidavit show that, between March 2009 and

September 2010, plaintiff would occasionally make her last data entry as much as two hours after

clocking out, as late as 8:00 p.m. or later.  (Clock-Out Data, Dorais Aff. Ex. A, at 1-3.)  Third,

plaintiff identified three other Apria employees who saw her working after 5:00 p.m.  (Titchenell

Dep. 126-27.)  These employees included John Beils, who worked on payroll, and Larry Clark, a

warehouse supervisor.  (Id.)  According to plaintiff, these people "knew [she] was still there, so

if [Dorais] asked them, he would have . . . known a time that [she] left."  (Id. at 62.)

Fourth, plaintiff's performance evaluations demonstrate that Dorais knew plaintiff was

sometimes working overtime without approval.  (July 20, 2009, Corrective Action Plan, Def.'s

Resp. Ex. 12, at 1 ("Productivity still hampers Connie & she still has to work OT despite being

warned that all OT needs to be approved."); 2009 Performance Appraisal Review, Def.'s Resp.

Ex. 15, at 2 ("Reduce OT to 0 unless approved").)  The evaluations are consistent with plaintiff's

statement that she sometimes accidentally clocked out after 5:00 p.m when working late.  When

that happened, Dorais noticed the overtime and advised her that she could not clock more than

forty hours a week without approval.  (See Titchenell Dep. 132 ("[I]f I did swipe a little later

sometimes without his – in error, and he would say you can't do that.  5 o'clock, you're done.

You have to get approval.").)  Finally, plaintiff testified that "it was accepted" that "mostly

everybody" in the Sharon Hill branch would sometimes clock out for lunch but continue

working, especially if "something really urgent" was pending.  (Id. at 49-50.)

Taken together, plaintiff has made a "modest factual showing" that management in the

Sharon Hill branch tacitly endorsed her alleged uncompensated overtime.  See Bosley, 2005 WL

1334565, at *3.  Defendant has presented evidence to rebut plaintiff's claims, but defendant's

evidence "invite[s] this Court to wade into credibility and merit determinations of Plaintiff's

claims, [which are] analyses improper for this stage in the proceedings" and are more properly

raised in a decertification or summary judgment motion.  Pereira, 261 F.R.D. at 67.

### 2. Plaintiff has made a modest factual showing that other employees were "similarly situated"

In support of her motion, plaintiff has included affidavits from Customer Service

Specialists in two of defendant's other branches.[4]  These affidavits state that at least two other

individuals with the same job as plaintiff encountered the same unwritten policy that Customer

Service Specialists should finish their work off the clock to meet performance demands because

supervisors approved overtime only sparingly.  Graziano, who worked in San Jose and San

Diego, California, states that he "would routinely clock out of work at 4:30 p.m., but would

continue to work 'off the clock' with the knowledge of [his] supervisors, in order to finish the

---

[4] Plaintiff has also cited three lawsuits that non-Customer Service Specialist employees
filed against defendant.  (Schwartz Aff. ¶¶ 9-12.)  Defendant contends that the Court should not
consider these lawsuits as evidence because they do not "involve unreported off-the-clock work
or Customer Service Specialists."  (Def.'s Resp. 33.)  Because plaintiff has met her burden
through the other evidence she presented, the Court need not address the probative value of the
other cases against defendant.

work assigned." (Graziano Aff. ¶ 6.)  On one occasion, he requested overtime to complete a

report, but his supervisor said no. (Id. ¶ 7.)  When Graziano asked "whether [he] had to

complete the report on [his] own time," the manager "responded 'do what you gotta do.'" (Id. ¶

8.)  The manager watched him punch out and return to work and said he was a "team player."

(Id. ¶ 9.)  Graziano claims to have "personal knowledge that many other hourly employees,

including customer service specialists," routinely worked unpaid overtime.  (Id. ¶ 11.)

Armstrong states that she had similar experiences in defendant's Indianapolis office.  Her

supervisors "routinely" told her that she "could work no more than 40 hours per week and that

there would be no payment for overtime work unless previously approved," yet she "was

repeatedly given more than 40 hours per week of work to do and told to 'get it done.'"

(Armstrong Aff. ¶ 5.)  She claims she worked unpaid overtime before clocking in or at the end of

the day "with the full knowledge" of her two supervisors. (Id. ¶¶ 6-7.)  Armstrong also states

that she "personally observed two other customer service specialists working either before or

after they had clocked out, in full view of the supervisors." (Id. ¶ 9.)

Defendant makes two arguments to counter the Graziano and Armstrong affidavits.  First,

defendant has offered evidence that Graziano made only four data entries "relating to intakes or

orders" outside of his clock-in hours, (Bovee Aff., Def.'s Resp. Ex. 6, ¶ 6), and that Armstrong

made none (Wagner Aff., Def.'s Resp. Ex. 7, ¶ 6).  This argument is unavailing at this

preliminary stage of the case because there is no evidence as to whether Graziano and Armstrong

were working without making data entries that supervisors could track.  Defendants' second

argument is that both Graziano and Armstrong reported and were paid overtime, which

"discredits [plaintiff's] claim that she was expected to work off-the-clock overtime to accomplish

her work." (Def.'s Resp. 22.)  This argument fails for three reasons.  First, the overtime pay that

these individuals reported is relatively insubstantial: about 156 hours for Graziano over fourteen

months and about forty for Armstrong over sixteen months, or an average of less than three

hours per week for Graziano and less than one hour per week for Armstrong.  (See id.)  This is

far less than the ten to fifteen hours of overtime plaintiff claims she worked without pay each

week.  (Titchenell Dep. 101.)  Second, plaintiff has introduced evidence that supervisors

sometimes specifically requested and approved overtime, (id. at 104-05), leaving open the

question whether some or all of the Graziano and Armstrong overtime was requested.  Third, to

the extent defendant's evidence invites the Court to evaluate the credibility of Graziano or

Armstrong or the merits of their claims, it is more properly considered at the second stage of the

certification inquiry or on a motion for summary judgment.  See Pereira, 261 F.R.D. at 67.

### 3. The proposed class's claims are not too individualized for collective treatment

Defendant argues that the off-the-clock claims are too individualized to treat as a

collective action and, as a result, the Court should deny conditional certification or limit the

conditional class to defendant's Sharon Hill branch.  (Def.'s Resp. 25-29, 35-38.)  Defendant

contends that this case "will involve questions of fact that will vary widely and differ for each

potential plaintiff," which favors denial of certification in unscheduled "off-the-clock" cases like

this one.  (Id. at 35 (citing Lawrence v. City of Phila., No. 03-cv-4009, 2004 WL 945139 (E.D.

Pa. Apr. 29, 2004), and Bond v. Nat'l City Bank of Phila., No. 05-cv-0681, 2006 WL 1744474

(W.D. Pa. June 22, 2006)).)

"Within this Circuit, however, courts confronting such circumstances have granted

conditional certification, and thus held the case over until the next stage of the certification

analysis."  Burkhart-Deal v. Citifinancial, Inc., No. 07-cv-1747, 2010 WL 457127, at *2-3

(W.D. Pa. Feb. 4, 2010).  "[A] defendant's claim or defense that individualized circumstances of

employees render the matter unsuitable for collective treatment may be more appropriately

reviewed during step two of the certification process." Id.  This case is very similar to Pereira v.

Foot Locker, Inc., in which the court rejected the argument "that each assessment of off-the-

clock work or unpaid overtime would be depend[e]nt on the employee him or herself, as well as

the individual manager, and not reflective of any overall policy."  261 F.R.D. at 66.  Instead, the

Pereira court found plaintiff's allegation "that Foot Locker had a policy of scheduling an hours

budget for each store that was inadequate for the store's work to be performed, that employees

were not allowed to sign in outside store hours and that manager's pay, and potentially their jobs,

were depend[e]nt upon staying within the insufficient hours budget" justified first-stage

conditional certification.  Id.  In this case, plaintiff has produced evidence that defendant had a

nationwide policy of requiring Customer Service Specialists to do more work than they could

perform in their normal work week and that Customer Service Specialists did not get approval

for overtime outside the normal hours.  This meets plaintiff's burden at this stage.

### 4.  Plaintiff's proposed notice

Plaintiff attached a proposed Notice of Collective Action Lawsuit to its Amended

Motion.  (Proposed Notice, Pl.'s Am. Mot. Ex. F.)  Defendant objects to the proposed notice on

two grounds: (1) its description fails to limit the potential class to Customer Service Specialists

who worked off-the-clock overtime without pay, and (2) the proposed liability period should be

"three years from the date of conditional certification because . . . the statute of limitations is

determined by the date each individual joins the collective action."  (Def.'s Resp. 38.)

The Court agrees with defendant's first objection.  The potential class must consist only

of individuals who are similarly situated to plaintiff, and the notice should reflect the class as

defined by the Court at pages 6-7 of this Opinion.  As to the second objection, the parties do not

dispute that the statute of limitations on an FLSA action is two years unless a plaintiff alleges a

willful violation, in which case it extends to three years.  See 29 U.S.C. § 255(a); (Pl.'s Am. Mot.

16; Def.'s Resp. 38).  For an opt-in plaintiff, the statute of limitations is tolled only when that

individual plaintiff files written consent.  Symczyk v. Genesis HealthCare Corp., 656 F.3d 189,

200 (3d Cir. 2011) (citing 29 U.S.C. § 256(b)).[5]  Thus, the notice should be sent only to potential

opt-in plaintiffs whose claims would not be time-barred – that is, individuals who worked as

Customer Service Specialists for defendant within the three-year period before the date the

notice is issued.

The parties shall submit an agreed-upon amended proposed form of notice that reflects

the proper scope of the potential class and provides for insertion by the Court of the beginning

date of the class period, which will be three years before the date that it approves the notice.

**V.      Conclusion**

Plaintiff has presented modest evidence that other potential plaintiffs are similarly

situated.  Although the Court takes note of the evidence defendant has offered in opposing

plaintiff's motion, it is not appropriate to adjudicate plaintiff's claim on the merits at this stage of

the proceedings.  Accordingly, the Court grants plaintiff's motion but limits the proposed class to

"All non-exempt Customer Service Specialists employed by Apria who have worked and/or are

still working in any branch office of Apria anywhere in the United States during the liability

period and who have not been paid overtime by Apria for work in excess of forty hours per

week."  The Court defers ruling on the size and scope of any class until discovery is complete

and the issue of final certification is before the Court.

An appropriate Order follows.

---

[5] As to plaintiff Titchenell, the statute of limitations is tolled from the date she filed her
complaint.  See 29 U.S.C. § 256(a).