## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONNIE TITCHENELL. | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.  11-563 |
| | : | |
| APRIA HEALTHCARE INC. | : | |
| Defendant. | : | |

DuBOIS, J.                                              August 29, 2012

### M E M O R A N D U M

### I.    INTRODUCTION

This is a collective action under the Fair Labor Standards Act ("FLSA").  Plaintiff Connie Titchenell alleges in her Second Amended Complaint that her former employer, defendant Apria Healthcare, Inc., violated the FLSA by requiring her to work "off the clock" without compensation to meet productivity demands.  According to plaintiff, defendant had a company-wide policy or pattern of requiring plaintiff and other similarly situated employees to work more than forty hours per week without overtime pay.

By Memorandum and Order dated November 8, 2011, the Court conditionally certified a collective class.  See Titchenell v. Apria Healthcare, Inc., No. 11-563, 2011 WL 5428559 (E.D. Pa. Nov. 8, 2011).  Presently before the Court is Plaintiff's Motion to Add Similarly Situated Persons to Conditionally Certified Collective Class and to Facilitate Notice Pursuant to 29 U.S.C. § 216(b) ("Motion to Add Persons").  For the reasons set forth below, the Court grants plaintiff's request to add persons to the collective class and denies plaintiff's request to equitably toll the statute of limitations as to those persons.

### II.    BACKGROUND

A detailed background of this case is set forth in the Court's prior Memorandum and is repeated here only as necessary to explain the Court's ruling on the Motion to Add Persons.

-1-

A.      **Factual and Procedural Background**

Defendant provides "home respiratory therapy and home medical equipment services"

and has 12,300 employees in approximately 500 offices across the country.  Titchenell, 2011 WL

5428559, at *1.  Plaintiff worked as a Customer Service Specialist in defendant's Sharon Hill,

Pennsylvania, office from May 2007 until defendant terminated her on September 22, 2010.  Id.

Plaintiff alleges that she "routinely had to work ten to fifteen extra hours per week after clocking

out at 5:00 p.m.," without overtime pay, to meet the productivity demands of her supervisors.  Id.

She further avers that her supervisors were "fully aware" of the unpaid overtime and that it was a

"consistent pattern and practice" for supervisors to demand that Customer Service Specialists

work overtime after clocking out without compensation because branch managers are paid more

if they minimize the "labor hours" used by their branches.  See id.; Pl. Mem. 8–9.

The parties engaged in initial discovery limited to conditional certification issues.

Plaintiff then moved for conditional certification of a collective class.  On November 8, 2011, the

Court granted plaintiff's motion as to a conditional class consisting of:

> All non-exempt Customer Service Specialists employed by Apria
> who have worked and/or are still working in any branch office of
> Apria anywhere in the United States during the liability period and
> who have not been paid overtime by Apria for work in excess of
> forty hours per week.

Titchenell, 2011 WL 5428559, at *8.

On December 2, 2011, the parties sent a Court-approved Notice of Collective Action

Lawsuit ("Notice") to all individuals who worked as Customer Service Specialists for defendant

on or after December 2, 2008 ("Liability Period").  The Notice directed individuals who wished

to join in the lawsuit to complete and return an Opt-In Consent Form to plaintiff's counsel on or

before January 16, 2012.

Forty-four additional plaintiffs opted in.  The opt-in plaintiffs worked in several of defendant's locations across the country, although none worked in the same office as plaintiff.

**B.      Statute of Limitations Under FLSA and Liability Period**

The FLSA statute of limitations, which plays an important role in the Motion to Add Persons, operates as follows: The statute of limitations on an FLSA action is either two years or, if a plaintiff alleges a willful violation, three years.  See 29 U.S.C. § 255(a).  In contrast to class actions under Federal Rule of Civil Procedure 23, the statute of limitations for opt-in plaintiffs— i.e., those individuals who "opt in" to the FLSA collective action after receiving court-approved notice—is tolled as to each individual plaintiff only "upon filing of a written consent." [1] Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 200 (3d Cir. 2011) (citing 29 U.S.C. § 256(b)).  Thus, after the Court conditionally certified the collective action, the Notice was sent on December 2, 2011, to persons who worked as Customer Service Specialists on or after December 2, 2008—that is, no more than three years before the first date on which opt-in plaintiffs could have filed written consent,.  See Doucoure v. Matlyn Food, Inc., 554 F. Supp. 2d 369, 373 (E.D.N.Y. 2008) (holding that the appropriate liability period is "three years prior to the date of the notice itself").

**C.      Additional Opt-In Plaintiffs**

Plaintiff asserts that in March 2012 her counsel began receiving "telephone calls from persons who said they worked as Customer Service Specialists [for defendant], [and] had not received notice, but wanted to participate in the class action because they, too, had worked off the clock."  (Mem. Supp. Mot. Add Persons 4 (citing Aff. of Frank Schwartz, Esquire

---

[1] The statute of limitations as to Titchenell, the named plaintiff, is tolled as of the date she filed her complaint.  See 29 U.S.C. § 256(a).

("Schwartz Aff."), Ex. to Mot. Add Persons, ¶ 4).)  After discussing the matter with defendant's

counsel, plaintiff's counsel learned that the individuals who contacted him "were not included in

the Original Employee List because they had job descriptions different from that of Plaintiff."

(Id. ¶ 7.)  Plaintiff served additional interrogatories on defendant, requesting, inter alia, that

defendant identify any employee who held "a job title with the words 'customer service

specialist' anywhere in their written job description" during the Liability Period.  (Def.'s

Answers Pl.'s 2d. Set Interrogs., Mot. Add Persons Ex. B, at 4.)  Defendant identified nineteen

such job positions.

       Plaintiff argues that six of the additional positions are "so sufficiently similar to that of

[plaintiff Titchenell] that the persons in those positions during the Liability Period should be

added to the existing collective class."  (Mem. Supp. Mot. Add Persons ("Pl. Mem.") 6.)

Defendant agrees to the addition of four of those positions for the purposes of conditional

certification and opposes two others.  (Mem. L. Supp. Def.'s Opp'n Mot. Add Persons ("Def.

Mem.") 4.)  The four agreed-upon positions are (1) Customer Service Associate; (2) Senior

Customer Service Associate; (3) Customer Service Associate Team Lead; and (4) Patient Service

Coordinator.  The two disputed positions are (1) Senior Customer Service Specialist and (2)

Customer Service Specialist Team Lead.

## III.    DISCUSSION

       The Motion to Add Persons presents two issues.  The first is whether the two disputed job

positions are sufficiently similar to the position plaintiff held such that individuals who held

those positions should be included in the conditionally certified collective class.  The second is

whether the Court should equitably toll the statute of limitations as to the additional members of

the conditionally certified class.  This Memorandum addresses those issues before considering

several logistical matters regarding facilitation of notice to the additional class members.

### A.    Whether Additional Job Titles Should Be Added to the Conditionally Certified Class

#### 1.    Legal Standard

As set forth in the Court's prior Memorandum, the Court will consider the Motion to Add

Persons under the "modest factual showing" standard, which courts have generally applied to

conditional certification motions when discovery has commenced and the parties submit

deposition testimony, declarations, and other evidence in support of their respective positions.

See Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 63 (E.D. Pa. 2009); Bishop v. AT & T Corp.,

256 F.R.D. 503, 507 (W.D. Pa. 2009).

Plaintiff must make "a 'modest factual showing' that the similarly situated requirement is

satisfied."  Bosley v. Chubb Corp., No. 04-4598, 2005 WL 1334565, at *3 (E.D. Pa. June 3,

2005).  Without evaluating the merits of plaintiff's case, the Court must determine "whether

plaintiff's proposed class consists of similarly situated employees who were collectively 'the

victims of a single decision, policy, or plan.'"  Lugo v. Farmer's Pride Inc., No. 07-749, 2008

WL 638237, at *3 (E.D. Pa. Mar. 7, 2008) (quoting Ruehl v. Viacom, Inc., 500 F.3d 375, 388

(3d Cir. 2007)).  Plaintiff is required to "provide some 'modest' evidence, beyond pure

speculation, that defendant's alleged policy affected other employees."  Smith v. Sovereign

Bancorp, Inc., No. 03-2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003).

#### 2.    Parties' Arguments

Defendant agrees that individuals with the following job titles are "similarly situated" to

plaintiff, who was a Customer Service Specialist: Customer Service Associate, Senior Customer

Service Associate, Customer Service Associate Team Lead, and Patient Service Coordinator.

The parties dispute whether Senior Customer Service Specialists and Customer Service Specialist Team Leads should be added to the conditional class.

According to plaintiff, persons having the disputed job titles[2] are similarly situated to plaintiff because all are non-exempt[3] hourly employees who "record time using the same computerized system (E-Time)," are "subject to the same overtime pay policy," have "significant overlap in their job descriptions," "perform similar tasks," must meet "similar job qualifications," and are "subject to the same incentive pay plan whereby branch managers may be paid more if the number of labor hours used is limited."  (Pl. Mem. 8–9.)  "Despite minor differences in their job descriptions and tasks, and despite working at different locations with different managers," plaintiff contends that all of the proposed additional class members "have similar off-the-clock claims" based on "a widespread pattern and practice of unpaid overtime, pursuant to a uniform overtime policy."  (Id. at 9.)

Defendant responds that Senior Customer Service Specialists and Customer Service Specialist Team Leads should not be added to the conditionally certified class because plaintiff "has failed to provide any evidence, beyond pure speculation," that employees with those job titles "were subject to the same alleged single corporate-wide decision, policy or plan to violate the FLSA as [plaintiff]."  (Def. Mem. 8.)  Defendant asserts that "the record, at best, demonstrates that the alleged unwritten policy was implemented in an ad hoc, decentralized manner depending upon the individualized circumstances . . . and the management practices" at

---

[2] The arguments plaintiff asserts in the Motion to Add Persons apply to all six job titles.  Because defendant only opposes adding two of the job titles, this Memorandum addresses whether persons having those two contested job titles are similarly situated to plaintiff.

[3] Plaintiff states in her brief that all "are exempt hourly employees."  (Pl. Mem. 8.)  The Court understands this to be a typographical error; exempt hourly employees cannot bring the type of unpaid overtime claim plaintiff asserts in this case, see 29 U.S.C. § 213, and all of the job descriptions plaintiff submitted state that the employees are non-exempt.

each of defendant's locations.  (Id.)  Moreover, according to defendant, persons with the three

job titles had "significant[ly]" different "duties and responsibilities," and, even among persons

with the same job title, duties "were different and varied depending on the branch level and

region."  (Id. at 8–10.)

### 3.     Analysis

For the reasons set forth below, the Court concludes that plaintiff has made the requisite

"'modest factual showing' that the similarly situated requirement is satisfied" with regard to

Senior Customer Service Specialists and Customer Service Specialist Team Leads.  Bosley, 2005

WL 1334565, at *3.  The Court first addresses whether the job titles have sufficiently similar

functions to plaintiff's position, then considers defendant's argument that plaintiff has not

alleged a "a single decision, policy, or plan," see Lugo, 2008 WL 638237, at *3, that affected

multiple employees across different branch offices.

### i.     Job Descriptions

The Court concludes that the job descriptions are sufficiently similar to plaintiff's to be

similarly situated.  Senior Customer Service Specialists and Customer Service Specialist Team

Leads, like Customer Service Specialists, are hourly, non-exempt employees.  (Customer Service

Specialist Team Lead Job Description ("CSSTL Job Description"), Mot. Add Persons Ex. C, at

1–2; Senior Customer Service Specialist Job Description ("SCSS Job Description"), Mot. Add

Persons Ex. C, at 1–2.)  All are subject to defendant's "Overtime Pay Policy requiring advance

management approval for work in excess of forty hours per week."[4]  Titchenell, 2011 WL

5428559, at *1.

---

[4] Plaintiff asserts that Senior Customer Service Specialists and Customer Service Specialist
Team Leads are covered by this policy, which was submitted as an exhibit to plaintiff's
Amended Motion for Conditional Certification of Collective Class and to Facilitate Notice

Defendant argues that there are "significant differences between the duties and responsibilities of each position," pointing to the "substantial supervisory role" of Customer Service Specialist Team Leads and other "additional responsibilities and duties" that Senior Customer Service Specialists have when compared with Customer Service Specialists.  (Def. Mem. 9–10.)  This argument fails for two reasons.

First, there is substantial overlap between the two job titles defendant contests and the four job titles defendant concedes are similarly situated to plaintiff.  In fact, the job description for Senior Customer Service Specialist, which is contested, is effectively identical to the job description for Senior Customer Service Associate, which is not.  (Compare SCSS Job Description 1–2, with Senior Customer Service Associate Job Description, Mot. Add Persons Ex. C, at 1–2.)  There is also substantial overlap between the job description for Customer Service Specialist Team Lead, which is contested, and the job descriptions for other uncontested job titles, especially Senior Customer Service Associate.  (Compare CSSTL Job Description, with, e.g., Senior Customer Service Associate Job Description, Mot. Add Persons Ex. C, at 1–2.)  The distinctions defendant seeks to draw are not borne out by the job descriptions, and defendant has offered no explanation for its inconsistent positions.

Second, all six of the job titles plaintiff seeks to add to the conditionally certified class have essentially the same job functions as plaintiff to the extent that all are non-management customer service positions.  Importantly, these six job titles do not encompass authority to approve overtime.   To the contrary, plaintiff's claim is based on the allegation that branch managers were "paid more if the number of labor hours used is limited," (Pl. Mem. 8–9), and thus "tacitly encouraged [conditional class members] to work off the clock by setting

Pursuant to 29 U.S.C. § 216(b).  Defendant has not controverted plaintiff's assertion or submitted any evidence to the contrary.

unattainable productivity goals while severely limiting or refusing overtime,"[5] <u>Titchenell</u>, 2011 WL 5428559, at *4.

ii.        <b>Corporate-Wide Policy</b>

Defendant's next argument, that there was no "single corporate-wide decision, policy or plan" applicable to the disputed additional class members (Def. Mem. 8), is also rejected.  When it conditionally certified the original collective class, the Court rejected two very similar arguments advanced by defendant.  On the basis of affidavits from two other employees, one of whom had worked in defendant's Indianapolis office, and the other had worked in two of defendant's offices in California, the Court concluded that plaintiff "produced evidence that defendant had a nationwide policy of requiring Customer Service Specialists to do more work than they could perform in their normal work week and that Customer Service Specialists did not get approval for overtime outside the normal hours."  <u>Titchenell</u>, 2011 WL 5428559, at *6–7. The Court also rejected defendant's argument that the proposed collective class should be limited to the branch office where plaintiff worked because the class's claims would be too individualized for collective treatment.  <u>Id.</u>

---

[5] Plaintiff alleges in her Second Amended Complaint that a Customer Service Specialist Team Lead, Susan Dix, worked in tandem with a Branch Manager to set the productivity requirements she was unable to meet.  (<u>See</u> Second Am. Compl. ¶¶ 12–15, 18–21.)  For three reasons, that fact does not undermine the Court's conclusion that Customer Service Specialist Team Leads are similarly situated to plaintiff.  First, defendant concedes that Customer Service Associate Team Leads, with an almost identical job description to Customer Service Specialist Team Leads, should be in the conditional class.  Second, a Customer Service Specialist Team Lead, <u>inter alia</u>, "[s]chedules . . . work assignments" and "[m]onitors staffing requirements," but plaintiff asserts that Branch Managers, not Customer Service Specialist Team Leads, have authority to approve overtime and are incentivized by defendant to reach productivity benchmarks without approving overtime.  (<u>See</u> Customer Service Associate Team Lead Job Description, Mot. Add Persons Ex. C, at 1–2; Pl. Mem. 8–9.)  Third, the arrangement in plaintiff's branch may have been different from other branches; factual specifics regarding each branch are more properly addressed at the final certification stage.

-9-

Defendant has offered no reason for the Court to reconsider its prior determination. To the contrary, the evidence in favor of collective certification is stronger than it was originally. The fact that individuals who worked in several of defendant's locations across the country have opted in to the conditionally certified collective class supports plaintiff's allegation that defendant's policy had a nationwide effect. Moreover, "[t]wo Senior Customer Service Specialists and one Patient Service Coordinator" who worked at different branches from plaintiff contacted plaintiff's counsel, alleging that "they too had worked off the clock." (Aff. Frank Schwartz, Mot. Add Persons Attach., ¶¶ 3–6; Mot. Add Persons 11–12.) As the Court noted in its prior Memorandum, see Titchenell, 2011 WL 5428559, at *6–7, this case is very similar to Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 65–67 (E.D. Pa. 2009), in which the court conditionally certified the collective class at the first stage of the inquiry and stated that, "while recognizing that individual concerns may at some point be effectively raised, . . . Plaintiff has alleged and supported a cohesive policy or plan and demonstrated its alleged consequences nationwide." Id. at 66.

The Court thus concludes that plaintiff has met her burden to "provide some 'modest' evidence" that the putative conditional class consists of "similarly situated employees who were collectively 'the victims of a single decision, policy, or plan.'" Lugo v. Farmer's Pride Inc., No. 07-cv-00749, 2008 WL 638237, at *3 (E.D. Pa. Mar. 7, 2008) (quoting Ruehl v. Viacom, Inc., 500 F.3d 375, 388 (3d Cir. 2007)). Accordingly, the four job titles on which the parties agree— Customer Service Associate, Senior Customer Service Associate, Customer Service Associate Team Lead, and Patient Service Coordinator—as well as the two that defendant disputes— Senior Customer Service Specialist and Customer Service Specialist Team Lead—will be added to the conditionally certified collective class.

**B.      Whether the Statute of Limitations Should be Equitably Tolled**

The next issue which the Court must address is whether the statute of limitations should be equitably tolled for the persons added to the conditionally certified collective class.  Plaintiff argues that the Court should "apply the same Liability Period applicable to the original collective class"—that is, toll the statute of limitations as of the last date plaintiffs could have opted in, January 16, 2012.  (Pl. Mem. 10.)  According to plaintiff, the "Proposed Additional Class Members have been deprived in an extraordinary way of their ability to assert their rights" "through no fault of their own" because plaintiff's counsel was not aware of the additional job titles before learning that they existed sometime after March 2012.  (Id. at 9–11; see also Pls.' Reply Mem. 4–5.)

Defendant makes two arguments as to why the statute of limitations should not be tolled. First, defendant contends that the FLSA statute of limitations is "clearly jurisdictional and not subject to tolling."  (Def. Mem. 14.)  Second, acknowledging that some courts have held that the FLSA statute of limitations is subject to tolling, e.g., Kelly v. Eckerd Corp., No. 03-4087, 2004 WL 614822, at *2 (E.D. Pa. Mar. 11, 2004), defendant asserts that those courts have held that tolling is only available when a defendant has "actively misled" a plaintiff in a way that resulted in a delayed filing.  See Woodward v. FedEx Freight E., Inc., 250 F.R.D. 178, 193 (M.D. Pa. 2008)).)  Because plaintiff was "clearly aware" of the other positions or could have "availed herself of pre-conditional certification discovery regarding other customer service related positions," and because the additional conditional class members could have brought claims themselves, defendant asserts that tolling is not appropriate.  (Id. at 16–17.)

The Court declines to address defendant's argument that the FLSA statute of limitations is jurisdictional because, even assuming equitable tolling is available,[6] it is not warranted on the present state of the record.

Equitable tolling is an "extraordinary" remedy that "can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" Santos ex rel. Beato v. United States, 559 F.3d 189, 197 (3d Cir. 2009) (quoting Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999)). Equitable tolling is appropriate "'(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.'" Id. (quoting Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005)).

None of those three situations is present in this case. Plaintiff argues that equitable tolling is appropriate because "Apria did not identify 'all Customer Service Specialists' prior to notice being sent." (Pl. Mem. 5.) However, plaintiff's belated awareness of the additional job titles that are the subject of the Motion to Add Persons is attributable to plaintiff, not defendant. The pre-certification interrogatories plaintiff served on defendant referred only to Customer Service Specialists and stated, in the definitions section, that "'Similarlry [sic] Situated

---

[6] Although some courts have declined to apply equitable tolling, the greater weight of authority is that equitable tolling is permissible. See, e.g., Doyle v. United States, 931 F.2d 1546, 1549 (Fed. Cir. 1991) (affirming denial of equitable tolling on ground that potential plaintiffs "had adequate opportunity to know of their claims against defendants and the opportunity, within a reasonable time, to file such claims" (quotation marks omitted)); Ruffin v. Entm't of the E. Panhandle, No. 3:11-CV-19, 2012 WL 28192, at *2 (N.D. W. Va. Jan. 5, 2012) ("[C]laims of putative opt-in plaintiffs could become time-barred before those potentially similarly-situated individuals receive notice of this action. This constitutes a circumstance beyond those individuals' control. Accordingly, this Court holds that the FLSA statute of limitations should be equitably tolled pending a determination on conditional certification.").

Employees' as used herein shall mean any and all employees . . . employed in the position of Customer Service Specialist."  (Pl.'s First Set Interrogs. Directed Def., Def. Resp. Ex. 4, at 4.) Moreover, plaintiff asked defendant only to "identify all employees of Apria, including former employees, who . . . held the job title of Customer Service Specialist."  (Id. at 7.)

Plaintiff asserts that defendant should have been "less parsimonious" and identified other job titles similar to "Customer Service Specialist," but this argument is unpersuasive given the specificity of plaintiff's interrogatories and the fact that, as the motion presently pending before the Court demonstrates, there are nineteen job titles with "job descriptions . . . similar to that of Plaintiff."[7] (Pl. Mem. 5–6.)  This is an issue that the parties should have recognized earlier and addressed.  However, the record simply contains no evidence that defendant "actively misled" plaintiff.  See Santos, 559 F.3d at 197; see also Oshiver v. Levin, Fishbeing, Sedran & Berman, 38 F.3d 1380, 1388–89 (3d Cir. 1994) (holding that "wrongdoing" or "intentionally misleading" conduct are prerequisites to the application of the equitable tolling doctrine).

The Court also rejects plaintiff's request to equitably toll the statute of limitations based on "truly extraordinary" circumstances.[8]  Plaintiff relies on the proposed additional class members having neither "timely knowledge of the existence of this collective action" nor "an opportunity to file a written opt in form."  (Def. Reply 5–6.)  These general assertions are not the extraordinary circumstances that justify equitable tolling.  See Perez v. Comcast, No. 10 C 1127, 2011 WL 5979769, at *2–3 (N.D. Ill. Nov. 29, 2011) (collecting FLSA equitable tolling cases); see also Woodard, 250 F.R.D. at 194 ("[C]ourts must be cautious about equitably tolling the

---

[7] Moreover, the parties agree that some job titles superficially similar to plaintiff's, like "Customer Service Specialist—IV" are not "similarly situated," yet others appearing superficially distinct are similarly situated, like "Patient Service Coordinator."

[8] Plaintiff does not assert that any potential opt-in plaintiff "timely asserted his or her rights mistakenly in the wrong forum."

FLSA limitations period especially where, as here, there are no allegations of wrongdoing on the part of the defendant.").  Courts have applied tolling when, for example, a case is stayed pending a decision by the Judicial Panel on Multidistrict Litigation, see Adams v. Tyson Foods, Inc., No. 07-CV-4019, 2007 WL 1539325, at *1–2 (W.D. Ark. May 25, 2007), or pending court-ordered mandatory settlement conferences, see Helton v. Factor 5, Inc., No. C-10-04927 SBA, 2011 WL 5925078, at *2 (N.D. Cal. Nov. 28, 2011).  On the other hand, in the average case in which the delay is attributable to the normal litigation process, courts have held that equitable tolling is not appropriate.  See, e.g., Muhammad v. GBJ, Inc., No. H-10-2816, 2011 WL 863785, at *2 (S.D. Tex. Mar. 9, 2011) (declining to apply tolling due to "the need for limited discovery to determine whether certification is appropriate" because such a need "is present in many FLSA actions"); Tidd v. Adecco USA, Inc., No. 07-11214-GAO, 2008 WL 4286512, at *5 (D. Mass. Sept. 17, 2008) ("[T]he circumstances of this case are not substantially different from other FLSA cases, and acceptance of the plaintiffs' argument would essentially mean that equitable tolling should occur in every FLSA collective action, changing the principle of equitable tolling from the exception to the norm.").  On the present state of the record, there are no extraordinary circumstances that justify equitably tolling the statute of limitations as to all of the members added to the conditional class.

The case on which plaintiff relies, Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445 (S.D.N.Y. 2011), does not compel a different conclusion.  In fact, the Whitehorn court held that it would not decide whether tolling was appropriate at the notice stage of a FLSA case because it was "not yet clear whether or not any potential plaintiffs [would] be barred . . . due to a delay in notice."  767 F. Supp. 2d at 450.  The Whitehorn court held that it would determine whether equitable tolling applied to individual plaintiffs' claims after opt-in notices

were filed, upon any individual plaintiff's showing that equitable tolling was justified.  Id.  A similar procedure is appropriate in this case, and the Court will provide that the denial of plaintiff's request for equitable tolling is without prejudice to the right of an individual plaintiff to seek equitable tolling at a later stage of the case.

Accordingly, as with the original notice, the amended notice should be sent to individuals who worked in the relevant job titles for defendant within the three-year period before the date the notice is issued.  See Titchenell, 2011 WL 5428559, at *7.  The Court will address equitable tolling at a later stage of the case if warranted by the circumstances of any particular plaintiff.

### C.    Logistical Issues Regarding Facilitation of Notice

"[T]he court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way," including "[b]y monitoring preparation and distribution" of the notice of a collective action.  See Hoffman-La Roche Inc., 493 U.S. at 170–72.  Plaintiff asks the Court to approve the proposed notice and opt-in consent form that appear as exhibits D and E, respectively, to the Motion to Add Persons.  (Mot. Add Persons 12–15.)  Defendant raises three issues regarding the proposed notice and consent form.

First, defendant requests that the Court limit plaintiff's contacts with the additional collective action members by leaving in place a Court-approved stipulation between the parties. With respect to the original conditional certification, the stipulation governed the manner in which plaintiff's counsel was permitted to contact potential plaintiffs.  (Def. Mem. 18.)  Plaintiff has raised no objection to this request, and the Court concludes that the request is appropriate.

Second, defendant asserts that plaintiff's proposed notice should not be sent to anyone who already received the notice the Court approved for the original conditional class.  (Id.) Defendant's argument is partially flawed.  The original notice stated that plaintiff had brought

this case "on behalf of all Customer Service Specialists . . . who have not been paid overtime . . . for work in excess of forty hours per week." (Notice of Collective Action Lawsuit, Ex. to November 17, 2011, Order, at 1.)  A potential plaintiff who worked, for example, as both a Customer Service Specialist and a Customer Service Specialist Team Lead could have construed this language as applying to claims that accrued only he or she was working as a Customer Service Specialist.  Thus, the only individuals who should not receive the second notice are those who worked as Customer Service Specialists throughout the entire liability period.

Third, defendant asserts that the proposed notice "does not properly define the class, as modified," and that the proposed opt-in form "lacks specific information about each opt-in's claim." (Def. Mem. 18.)  The Court agrees.  The notice should reflect the appropriate liability period and the proper scope of the conditionally certified class.  Furthermore, the proposed opt-in form should track the form the Court approved in its Order dated November 17, 2011, and should include a blank in which opt-in plaintiffs specify which position they held.

Accordingly, within five days of the issuance of this Memorandum and accompanying Order, the parties shall, through counsel, provide an agreed-upon proposed form of notice and opt-in consent form that comply with the following requirements:

(1) The class shall be defined as:

> All non-exempt Customer Service Specialists, Senior Customer Service Specialists, Customer Service Specialist Team Leads, Customer Service Associates, Senior Customer Service Associates, Customer Service Associate Team Leads, and Patient Services Coordinators employed by Apria who have worked and/or are still working in any branch office of Apria anywhere in the United States during the liability period and who have not been paid overtime by Apria for work in excess of forty hours per week.

(2) The agreed-upon proposed form of notice shall provide for insertion by the Court of the beginning date of the liability period, which is three years before the date on which the Court approves the notice.

(3) The agreed-upon proposed form of notice shall provide that it will be sent to all members of the class who worked for defendant during the liability period, except for those individuals who worked as Customer Service Specialists during the entire liability period and did not hold any of the other job titles included in the class definition.  The proposed form of notice shall include language agreed upon by the parties explaining why some such persons are receiving the notice a second time.

## V.      CONCLUSION

For the reasons set forth above, the Court grants plaintiff's Motion to Add Persons to the extent that it seeks to add six job titles to the conditionally certified class and denies plaintiff's request for equitable tolling of the statute of limitations without prejudice to individual opt-in plaintiffs' right to seek equitable tolling.  The Court defers ruling on the size and scope of any class until discovery is complete and the issue of final certification is before the Court.

An appropriate Order follows.